IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

                    Plaintiff,

        vs.

MATT TIBBELS,

                    Defendant.

4:21MJ3121

GOVERNMENT RESPONSE TO
DEFENDANT'S APPEAL

COMES NOW the United States of America through the undersigned attorney responding to the Defendant's appeal of Magistrate Judge Zwart's detention order. Defendant's objection/appeal must be denied. Magistrate Judge Zwart's decision to detain Mr. Tibbels was correct and should be upheld on the record as it currently stands. If this Court is inclined to release the Defendant on the Court's current record, the Government would request the opportunity to present recently obtained additional evidence in a supplemental hearing.

**<u>Procedural History</u>**

On October 5, 2021, Magistrate Cheryl R. Zwart signed a search and seizure warrant pursuant to Federal Rule of Criminal Procedure 41 allowing the search of defendant Matt Tibbels residence and allowing the seizure of potential evidence from the home. *See* 4:21MJ3120. On October 7, 2021, Judge Zwart signed a criminal complaint and issued an arrest warrant, finding there was probable cause to believe the Defendant had committed a violation of Title 18, United States Code, Section 2252(a)(2) by receiving child pornography. Judge Zwart issued these documents after reviewing a 23-page criminal complaint affidavit signed by Special Agent Anthony Peterson, who was sworn before Judge Zwart affirming that all the information contained in the affidavit was true. *See* Filing No. 1. Mr. Tibbels was arrested that same day. Filing No. 12.

On October 8, 2021, Mr. Tibbels was interviewed by Pretrial Services Officer Kate Eubanks, and a pretrial services report was rendered. Filing No. 7. During a detention hearing held later that day, the Government submitted evidence in favor of detention, including judicial notice of the criminal complaint and its affidavit, the pretrial services report, the State of Nebraska's Daycare Licensing Regulations as it pertains to Family Child Care Home I, found in Nebraska Department of Health and Human Services Title 391, Chapter 1, and further admitted as an exhibit a photo of the interim licensing agreement entered into by Ms. Tibbels and the State of Nebraska on October 6, 2021. Filing No. 8. Additionally, case agent Anthony Peterson provided testimony for the Government. *Id.* Mr. Tibbels presented the testimony of his wife Ms. Theresa Tibbels. *Id.* Based on all the evidence, Judge Zwart found Mr. Tibbels should be detained. *Id.* A written order outlining Judge Zwart's detention findings was filed on October 12, 2021. Filing No. 15.

During the hearing held on October 8, 2021, Judge Zwart additionally held the preliminary hearing pursuant to Federal Rule of Criminal Procedure 5. Filing No. 8. Considering the same evidence relied on for detention, Judge Zwart found there was probable cause to believe the allegation that Mr. Tibbels violated 18 U.S.C. § 2252 by receiving child pornography. Filing No. 9. On October 11, 2021, the Defendant appealed the detention order, making a conclusory argument that Judge Zwart erred in the detention order. Filing No. 13. No accompanying brief or statement of objections was filed.

## **Facts**

The Government relies on all the facts and information as provided in the Government's evidence admitted at the detention hearing held on October 8, 2021. The Government specifically highlights the following facts adduced in this evidence:

From on or about August 31, 2020 and continuing until at least August 5, 2021, a person operating Freenet peer-to-peer (P2P) software, utilizing IP addresses registered to Mr. Tibbels' residence, connected to a law enforcement computer on multiple occasions. Freenet is a sophisticated form of P2P software which offers near anonymity to its users and which stores pieces of files across many users' devices. On these occasions when the Tibbels residence user would connect to the law enforcement computer, it would request pieces of child pornography files, which could be received, compiled to create the complete file, and then reviewed by the Tibbels residence user. Based on the number of pieces being requested, there was a significant likelihood that the Tibbels residence user was the original requestor and ultimate receiver of the compiled child pornography file. Law enforcement reviewed the files being requested and received by the Tibbels residence user. The files included numerous videos, several of which were over 10 minutes in length, which depicted the sexual abuse of prepubescent children. The files included depictions of sadistic and masochistic sex acts being committed against children; prepubescent children of both genders engaged in sex acts with one another; and children involved in sex acts with animals.

After further investigation was conducted into the Tibbels residence, it was learned that the residence was the location of a state licensed in-home daycare. The Tibbels' daycare was operated from around 1989 and was licensed since at least 1996. Mr. Tibbels' wife is the licensed operator of the daycare. However, Ms. Tibbels admitted to occasionally leaving Mr. Tibbels alone with the children and described him as a substitute. Additionally, during the course of the COVID-19 pandemic, Mr. Tibbels has primarily worked from home in the basement of the ranch-style residence, thus he was consistently present in home when the children were present. The Freenet downloads often occurred on days when children would have been present in the home. These

3

downloads included portrayals of children the same age as children who were being watched within the home.

On October 5, 2021, the search warrant was executed. There were approximately six children present in the home that day. The children ranged between the ages of 18 months old to up to 4-5 years old. Mr. and Ms. Tibbels were determined to be the only individuals who lived at the residence. During the execution of the search warrant, the FBI conducted a preliminary review of some of the electronic devices located in Mr. Tibbels' home office area of the residence. The preliminary review revealed child pornography files, including files depicting children as young as 2-3 years old being subjected to sexual abuse. The FBI seized many devices pursuant to the search warrant. The devices seized consisted of over 5 terabytes of data.

On October 6, 2021, Ms. Tibbels signed and received an interim licensing agreement with the State of Nebraska allowing the operation of the daycare to continue within the home. Ms. Tibbels informed parents of the children she watched that she had received this licensing agreement. The State of Nebraska further informed the FBI that they would allow the daycare to continue operations despite the pending investigation.

On October 6, 2021, the FBI began to forensically review the devices seized from the Tibbels residence. On one of the first devices to be examined, which was a 16 GB USB drive, the FBI located 164 known[1] images of child pornography, two known videos that contained child pornography, and 98 additional images and four videos that contained clear child pornography. Nearly all the child pornography files found depicted prepubescent children. These child pornography files were found as deleted files on the device. Alongside these files, the FBI located Tibbels' family photos and a scanned copy of Mr. Tibbels' United States Passport. The review of

---

[1] "Known files" are files that have been previously recognized as child pornography by the National Center for Missing and Exploited Children ("NCMEC").

this device which produced substantial evidence represents a mere 0.3% of all the seized data that needs to be reviewed.

## Standard of Review

The district court's review of detention orders is governed by 18 U.S.C. § 3145(b) and such reviews are de novo. *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985); NE Crim. R. 46.2(c). However, any credibility findings made by the Magistrate Judge must be provided their full weight because credibility determinations "are virtually unreviewable on appeal." *United States v. Cervantes*, 929 F.3d 535, 539 (8th Cir. 2019) (quoting *United States v. Santana*, 150 F.3d 860, 864 (8th Cir. 1998)); *see also Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014); *United States v. Coleman*, 909 F.3d 925, 929 (8th Cir. 2018); *Wiggins v. United States*, 900 F.3d 618, 623 (8th Cir. 2018).

## Law and Argument

### I.      Bail Reform Act

The Bail Reform Act governs the release and detention of defendants awaiting trial. 18 U.S.C. § 3142. For certain offenses there is a presumption against release of the defendant. *See* § 3142(e). In cases such as this which allege a violation of 18 U.S.C. § 2252(a) the presumption applies when the magistrate judge finds that there is probable cause to believe a violation of this statute has been committed by the defendant. § 3141(e)(3)(E). The burden is on the defendant to rebut this presumption. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). If he fails to do so, the defendant must be ordered detained.

If the defendant successfully rebuts the presumption, the burden then falls back on the Government to prove by clear and convincing evidence, that the defendant represents a risk of danger to the community and that no conditions of release will alleviate the risk the defendant

5

poses. § 3142(f); *see also Abad*, 350 F.3d at 797. In determining whether there are conditions of release that are sufficient to mitigate the risk posed, the Court examines a list of statutory factors including 1) the nature and circumstances of the offense; 2) weight of the evidence; 3) history and characteristics of the defendant; and 4) "the nature and seriousness of the danger to *any* person in the community that would be posed by the" defendant's release. § 3141(g) (emphasis added); *see also Abad*, 350 F.3d at 797. Additionally, even when the defendant rebuts the presumption of detention, the presumption still remains as an evidentiary finding to be considered with other evidence in determining whether there are any conditions that will assure the safety of the community from the dangers posed by the defendant. *Abad*, 350 F.3d at 797.

## II. Magistrate Judge Zwart correctly determined detention in this case and Mr. Tibbels should remain detained.

As outlined further below, this Court should deny Mr. Tibbels' objection because, pursuant to the record as it stands, Mr. Tibbels has not rebutted the presumption of detention in this case and further, he represents a risk of danger to the community based on clear and convincing evidence and there are no conditions that will assure the safety of the community. Nevertheless, should this Court believe that the evidence as it stands is not sufficient to support detention, the Government requests to present additional evidence supporting detention.

Pursuant to Nebraska Criminal Rule 46.2, on appeal of the detention order "a district judge may hear and consider additional evidence not considered by the magistrate judge if that evidence was not available to be presented to the magistrate judge at the hearing held under 18 U.S.C. § 3142(f)." NE Crim R. 46.2. The judge may also hear additional evidence where the requesting party shows good cause. *Id.*

In this case, should the District Court believe there is not sufficient evidence on the current record to uphold Judge Zwart's order, the Government requests a supplemental hearing during

which it would solely present additional evidence for consideration. This case has been quickly evolving. The search warrant was issued on October 5, 2021. Defendant was arrested on October 7, 2021. And the detention hearing was held on October 8, 2021. Since that time, the Government has gathered additional evidence in this matter which further shows the dangerousness Mr. Tibbels poses to the community and that no conditions exist that would properly ensure that the risk is mitigated. Specifically, the additional evidence that the Government would put forward through witness testimony would show:

1. Mr. Tibbels had a more active role in the daycare than previously known. This role was more extensive than was represented by Ms. Tibbels in her October 8, 2021 testimony. The Government's additional evidence would show he was often in the upstairs of the home around the children. Further. it was not infrequent that Ms. Tibbels would leave the children in the sole custody, care, and control of Mr. Tibbels.

2. The FBI has continued to review the electronic evidence and has begun to review Mr. Tibbels' computer. The review of the computer has uncovered additional child pornography evidence. It has also revealed Mr. Tibbels' meticulous daily pattern of activity in seeking out, temporarily storing, then deleting child pornography files. He then would wipe the computer's hard drive clean on a regular basis using specialized software.

This additional information is highly relevant to the detention finding. It would prove that Ms. Tibbels' testimony regarding Mr. Tibbels' limited role in the daycare is not credible and that Mr. Tibbels is a danger to children. It would additionally show that Mr. Tibbels cannot be properly supervised if released. He has already misled pretrial services when pretrial services officer Eubanks asked him if he had any contact with minors and he replied "none." Filing No. 7. Additionally, the sophisticated manner in which Mr. Tibbels collected, stored and then hid nearly

7

all traces of child pornography on his computer shows a level of sophistication that would allow him the ability to hide any further illegal activity from his pretrial services supervisor if released. Accordingly, should this Court be inclined to overrule Judge Zwart's detention order, the Government requests that it be allowed to present this additional evidence during a hearing.

### III.   Mr. Tibbels' Objection Should be Overruled on the Current Record.

#### a.   Mr. Tibbels failed to rebut the presumption and must be detained.

Judge Zwart correctly found that Mr. Tibbels failed to rebut the presumption of detention in this case. Filing No. 15. The rebuttable presumption under 18 U.S.C. § 3142(e)(3)(E) applies in this case because Judge Zwart found, both by the signing of the criminal complaint and through the Rule 5 preliminary hearing, that there was probable cause to believe that Mr. Tibbels committed a violation of 18 U.S.C. § 2252(a)(2). *See* Filing Nos. 1 and 8. Mr. Tibbels bears the burden of persuading the Court that this presumption has been rebutted. *Abad*, 350 F.3d at 797. He failed to meet that burden.

As evidence, Mr. Tibbels produced his wife as a witness in an attempt to rebut the presumption. In her testimony Ms. Tibbels implied that Mr. Tibbels had a very limited role in the operation of the daycare and that she was not intending on reopening said daycare. However, Judge Zwart found that Ms. Tibbels' testimony was not credible. Credibility determinations "are virtually unreviewable on appeal" and Judge Zwart's credibility determination must stand. *Cervantes*, 929 F.3d at 539. Additionally, if allowed, the Government will produce an additional witness who will further contradict Ms. Tibbels' testimony. As mentioned above, this witness would discuss the extent of Mr. Tibbels' involvement with the daycare children and the amount of time that he spent alone with the children without Ms. Tibbels' supervision.

Based on this evidence and other information within the pretrial services report, Mr. Tibbels argued that he has been a resident of this community for 35 years and has maintained employment throughout this time. Filing No. 9. He argued that he was not involved with the daycare and that his wife promised not to reopen the daycare. *Id.* He argued there was no evidence in the record that he would not comply with conditions or supervision. *Id.*

However, as Judge Zwart outlined in her written order, Mr. Tibbels' argument failed to meet the burden required to rebut the presumption of detention. First, Judge Zwart found Ms. Tibbels' testimony was found to be not "fully credible." Filing No. 15. The Judge reasoned that Ms. Tibbels was not credible in indicating that she "knew nothing of her husband's receipt and viewing of child pornography." *Id.* And further, that Ms. Tibbels' testimony stating that she had no plans to and would not reopen the daycare was not credible based on the fact that the day after the search warrant was executed, Ms. Tibbels signed an interim licensing agreement with the State of Nebraska to keep the daycare open, and that she notified the parents of the children she cares for of this licensing agreement. *Id.* Additionally, Mr. Tibbels' argument that there was no evidence in the record that he would not comply with conditions of supervision were contradicted by the misleading statement Mr. Tibbels had already made to pretrial services about his contacts with children.

This Court should uphold Judge Zwart's ruling and find that Mr. Tibbels has failed to rebut the presumption of detention in this case. Based on this presumption, Mr. Tibbels must be detained. *See* § 3142(e)(3)(E).

> b. *Even if Mr. Tibbels rebuts the presumption, he represents a risk of danger and no supervision or conditions would alleviate this risk.*

Even if this Court determines that Mr. Tibbels did rebut the presumption of detention, that presumption is not erased, but merely remains a factor for the Court to consider. *Abad*, 350 F.3d

at 797. In addition to this presumption, the Government produced clear and convincing evidence that Mr. Tibbels is a risk of danger to the community and that no conditions or supervision could assure the safety of the community from further harms by the Defendant.

The Government produced evidence showing that Mr. Tibbels was using a sophisticated peer-to-peer (P2P) network to download child pornography. The files that were being downloaded by the Defendant, included numerous files portraying some of the worst types of child pornography including videos portraying the sexual abuse of minor children of the same age as the children who were present with the Defendant in his home every day for daycare—children for which, pursuant to Ms. Tibbels own testimony, Mr. Tibbels would sometimes be the sole caretaker. When the search warrant was executed, over five terabytes of electronic data was seized for review. A preliminary on-the-scene review of some of the devices during the search warrant execution revealed additional child pornography, including a file portraying a minor female between the ages of two and three with an adult male's penis pressed to the child's exposed vagina.

The day after the search warrant, Ms. Tibbels received an interim licensing agreement and sent a copy of the agreement to parents of children who attended the daycare—showing the intent for the daycare to remain open. On October 6th, the case agent also began forensically reviewing the devices seized. The review of one 16 GB USB drive revealed 262 image files and 6 video files of child pornography. These files were found in deleted storage space alongside Tibbels' family photos and a scanned copy of Mr. Tibbels' passport. During the detention hearing, SA Peterson testified further about the evidence found and indicated that nearly all the child pornography files found depicted prepubescent children. SA Peterson additionally testified that the downloads conducted by Mr. Tibbels on Freenet occurred on the same days there would have been children present in the home as Mr. Tibbels was working from home during the pandemic.

In addition to this evidence, Mr. Tibbels misled pretrial services when he indicated he has no contact with children. Further, his career as a computer programmer and the sophistication evident in his manner of downloading and hiding child pornography make it clear that supervision would be difficult. if not impossible, for pretrial services officers.

Considering the nature and circumstances of this offense, the presumption of evidence, the weight of the evidence, the characteristics of the defendant—including his career in computer programming—and the nature and seriousness of the danger to any person, including children, in the community, there are no conditions that assure the safety of the community, particularly children. *See* § 3142(g). His appeal should be denied.

## <u>Conclusion</u>

Based on the forementioned facts, this Court should uphold Judge Zwart's detention order because Mr. Tibbels failed to overcome the presumption of detention in this case and he also represents a risk of danger to the community which no conditions of release or supervision can erase. Should this Court be inclined to rule in favor of the Defendant, the Government requests the

ability to present new evidence which only add to the concerns recognized by Magistrate Judge Zwart and the Government.

Respectfully submitted,

Jan W. Sharp
Acting United States Attorney
District of Nebraska

By:   s/ Tessie L.S. Smith
         TESSIE L.S. SMITH, #25828
         Assistant U.S. Attorney